UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VISHAL SEHJPAL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:08CV478 RWS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before me on Petitioner Vishal Sehjpal's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Sehjpal entered a guilty plea to possession of child pornography and was sentenced to 30 months incarceration. His present motion seeks leave to withdraw his guilty plea. His grounds for relief include an allegation that he received ineffective assistance of counsel for counsel's failure to inform Sehjpal that if he pleaded guilty he would be deported and not allowed to return to the United States after he served his sentence. He also asserts the violation of other constitutional rights. For the reasons set forth below, the motion will be denied.

**I.      Background**

Sehjpal is a citizen of India, born in that country in 1984. He moved to the United States with his parents in 1996. On February 3, 2005, he was indicted on two counts of Possession of Child Pornography and one count of a "False Statement in Naturalization Matter." On February 22, 2007, Sehjpal entered a plea agreement in which he pleaded guilty to the two counts of possession of child pornography in exchange for Respondent's agreement to dismiss the false statement count.

In the plea agreement Sehjpal waived "all rights to contest the conviction or sentence in any post-conviction proceeding, including [a § 2255 proceeding], except for claims of prosecutorial misconduct or ineffective assistance of counsel."

In addition, Section E of the plea agreement states that the agreement does not limit the rights or the authority of the United States of America to take any civil actions against Sehjpal, including deportation.

On May 7, 2007, I sentenced Sehjpal to a 30 month term of imprisonment on each of the possession of child pornography counts. The sentences were ordered to run concurrently.

## II. Grounds for Relief

In his § 2255 motion filed on April 9, 2008, Sehjpal asserts that he should be allowed to withdraw his guilty plea based on the following grounds for relief:

(1) Trial counsel was constitutionally ineffective for failing to inform Sehjpal that his guilty plea "would greatly and adversely affect his immigration status."

(2) The deportation of Sehjpal would violate the Double Jeopardy Clause, and his Equal Protection and Due Process rights.

(3) The deportation of Sehjpal would amount to cruel and unusual punishment under the Eighth Amendment.

(4) Sehjpal was denied his rights under the Vienna Convention on Consular Relations Treaty.

The main point of Sehjpal's motion is that he now believes because he pleaded guilty in this matter not only will deportation proceedings be initiated against him but that it is certain he will be deported when his sentence has been served and that he will not be allowed to return to the United States. He asserts that his trial counsel should have advised him that if he entered a

guilty plea that he would almost certainly be deported and not allowed to return. Had his trial counsel provided this advice Sehjpal asserts that he never would have entered a guilty plea and would instead have elected to go to trial on the three counts charged in the indictment.

## III. Analysis

### A. *An Evidentiary Hearing Held*

On March 3, 2009, an evidentiary hearing was held at which Sehjpal presented evidence to support his motion to withdraw his guilty plea. The primary focus at the hearing was Sehjpal's allegation that his counsel was constitutionally ineffective for failing to tell Sehjpal that if pleaded guilty he would almost certainly be deported and not allowed to return to the United States.

At the hearing Sehjpal testified that his trial counsel, Bret Rich, told him there was a possibility that Sehjpal would be deported if he pleaded guilty to the two counts of possession of child pornography. Rich also told him that his arrest on the charges could be problematic for any future attempt by Sehjpal to become a United States citizen. Sehjpal testified that Rich referred Sehjpal to an immigration attorney, Barbara Bleisch, to advise Sehjpal of the impact of a guilty plea on his possible deportation. Sehjpal testified that Bleisch told him he had a good chance of staying in the United States if he pleaded guilty to the child pornography charges and had the charge of a false statement in a naturalization matter dropped. Sehjpal testified that Bret never stated a position on whether Sehjpal definitely would or would not be deported based on a guilty plea to the child pornography counts. Bret told Sehjpal that whatever Bleisch told him was the impact of the guilty plea to his possible deportation was the advice to be relied upon by Sehjpal. Bret told Sehjpal to hope for the best but to be prepared for the worst. Sehjpal testified at the time he entered his plea his understanding was that he would have a chance to fight any

deportation proceedings and get a chance to stay in the United States.

Sehjpal testified that the first time he became aware of the possibility that he would in fact certainly be deported after he completed his sentence was when he got to federal prison. He testified that his "team manager" in prison, Mr. Cleansing, told him that he would not have any chance of fighting deportation and that he would be deported. Sehjpal did not identify the basis, legal or otherwise, of the team manager's opinion.

Sehjpal testified that after he was sentenced his aunt spoke to an immigration attorney in Memphis, Tennessee, Barry Frayinger, and that after her conversation with that attorney Sehjpal's state of mind changed regarding how he felt about pleading guilty and his status in the United States after he pleaded guilty.

Sehjpal also testified that after he was sentenced he spoke to an unnamed attorney in San Francisco who advised Sehjpal that he should attempt to reopen his case because "It was ineffective assistance" and "you don't have a chance if you know, if you don't open the case."

Sehjpal stated that the advice he got from Rich and Bleisch was that if he pleaded guilty he would have a chance to fight any deportation action but that after he went to prison he came to believe that deportation was a certainty and that he would not be allowed to reenter the country. He stated that it was his belief that the advice Rich and Bleisch gave him was incorrect and that they should have advised him that he would certainly be deported and not allowed to return to the United States after he served his sentence.

Sehjpal's trial counsel Bret Rich testified that the concern over Sehjpal's possible deportation as a result of a plea or conviction of the charges against him was a constant theme in his representation of Sehjpal. Rich and Sehjpal discussed the issue many times and Rich never told Sehjpal that he would not be deported. Rich spoke with Bleisch and they both felt that the

charge of lying to an immigration or customs official was the charge most certain to lead to deportation. Getting that charged dropped in exchange for a guilty plea to the other counts gave Sehjpal a chance of not being deported.

Rich testified that he told Sehjpal that it was not certain one way or the other whether he would be deported if he pleaded guilty to the two child pornography charges. This opinion was based on Rich's review of the immigration regulations listing aggravated felonies dealing with child pornography that would result in deportation. He found that the statute Sehjpal was charged with violating, 18 U.S.C. § 2252A, was not listed as a violation that would automatically render an alien deportable.[1] This led Rich to conclude that deportation was not a certainty. Rich stated that because he and Sehjpal knew deportation was a very real possibility, and because Rich was not an expert in immigration, Rich sent Sehjpal to see Bleisch to advise Sehjpal on the possibility of his deportation if he pleaded guilty to the two counts of possession of child pornography.

Rich never quantified how likely it would be that Sehjpal would be deported. He explained to Sehjpal that based on his own experience and the advice from Bleisch that the possibility of being deported existed and that deportation proceedings may be initiated against Sehjpal in the future.

At the time of the evidentiary hearing, no removal proceedings had been initiated against Sehjpal. The parties asked to set a status conference in the future to monitor if such proceedings had been initiated. Two status conferences were held and at the second, on July 16, 2009, the

---

[1] The Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43) enumerates various "aggravated felonies" the commission of which will render an alien deportable. This list includes child pornography offenses under 18 U.S.C. §§ 2251, 2251A, and 2252 but does not list charges under § 2252A which is the basis of the charges to which Sehjpal entered a guilty plea.

parties stated that removal proceedings had been commenced against Sehjpal.

B.      *Ineffective Assistance of Counsel*

To state a claim for ineffective assistance of counsel, Sehjpal must prove two elements. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id. at 689.

Second, Sehjpal "must show that the deficient performance prejudiced the defense." Id. at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Counsel is not ineffective for failing to make a meritless argument. See Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994).

Sehjpal's primary claim in this proceeding is that his trial counsel was ineffective for failing to advise Sehjpal that the possibility was very great that he would be deported and not be allowed to reenter the United States after entering a guilty plea to the child pornography counts. Sehjpal asserts that had he received this advice he would have not entered a guilty plea and would have gone to trial on the three counts in the indictment. Sehjpal seeks leave to withdraw his guilty plea and proceed to trial.

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985)(internal quotation and citations omitted). When "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Id. (citation omitted). The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Id. at 59. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

*Collateral Consequences*

The United States attorney asserts that an analysis of ineffective assistance of counsel under Strickland is unnecessary in this matter because "deportation is a collateral consequence of a guilty plea and failure to advise a defendant of such a potential consequence does not amount to ineffectual assistance of counsel." See United States v. Gonzalez, 202 F.3d 20, 25 (1st Cir. 2000); United States v. Fry, 322 F.3d 1198, 1200 (9th Cir. 2003); United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985); United States v. Banda, 1 F.3d 354, 356 (5th Cir. 1993); Varela v. Kaiser, 976 F.2d 1357, 1358 (10th Cir. 1992); Santos v. Kolb, 880 F.2d 941, 944 (7th Cir. 1989); United States v. Yearwood, 863 F.2d 6, 8 (4th Cir. 1988).[2]

While these courts have concluded that the *failure* to advise a client of deportation

---

[2] A separate issue considered by federal courts is whether a federal district judge has an independent duty to advise a defendant of the impact of a guilty plea on his immigration status. All of the federal courts that have considered the issue have rejected imposing such a duty. See El-Nobani v. United States, 287 F.3d 417, 421 (6th Cir. 2002)(deportation a collateral consequence to guilty plea and judge under no duty to advise defendant regarding collateral consequences).

implications as a result of a guilty plea does not amount to ineffective assistance of counsel, three Circuit Courts have stated that an ineffective assistance claim may lie where counsel gave *incorrect advice* regarding the possibility of deportation following a guilty plea. Campbell, 778 F.2d at 769 (in dicta "Counsel's affirmative misrepresentation in response to a specific inquiry from the defendant may, however, under certain circumstances, constitute ineffective assistance of counsel."); Downs-Morgan v. United States, 765 F.2d 1534, 1538 (11th Cir. 1985)(defendant entitled to an evidentiary hearing to determine if counsel's advice that defendant's guilty plea would not result in his deportation amounted to ineffective assistance of counsel); United States v. Santelises, 509 F.2d 703, 704 (2nd Cir. 1975)(an affirmative misrepresentation by counsel regarding the collateral consequence of deportation as the result of a guilty plea is necessary to establish an ineffective assistance of counsel claim); United States v. Couto, 311 F.3d 179, 187 (2nd Cir. 2002)("counsel affirmatively misled Defendant into believing there were things that could be done to avoid deportation (when in fact there were none)"); United States v. Kwan, 407 F.3d 1005, 1016 (9th Cir. 2005)(trial counsel, represented himself as having expertise on the immigration consequences of criminal convictions, mislead defendant by stating there was no serious possibility of deportation which was not correct).

In the present matter it is clear that Sehjpal's trial counsel, Rich, discussed the issue of deportation with Sehjpal. So this case does not fall into the collateral consequences line of cases where counsel did not address the issue.

The analysis of whether Rich's representation was constitutionally ineffective should instead turn on whether Rich misled Sehjpal regarding the impact of a guilty plea on Sehjpal's immigration status. Recognizing that he was not an expert on immigration law, Rich had Sehjpal meet with an immigration attorney to obtain further advice regarding a guilty plea. The

immigration attorney advised that if the charge of giving false information in an immigration matter were dropped Sehjpal would have a chance of fighting deportation. Rich stated at the evidentiary hearing that because Sehjpal was charged under 18 U.S.C. § 2252A it was uncertain whether Sehjpal would be deported based on his guilty plea. Rich told Sehjpal, based on his experience and the advice of immigration counsel that there was a possibility of deportation but he never qualified whether the possibility was great or minimal. He told Sehjpal to hope for the best but to be prepared for the worst.

At the evidentiary hearing Sehjpal did not establish with competent evidence that it was almost a certainty that he would be deported based on his guilty plea and that Rich's failure to tell him that amounted to ineffective assistance of counsel. To support his assertion that deportation was inevitable Sehpal testified that a team manager where he was imprisoned told him that he would certainly be deported. This opinion is not supported by any legal citation or authority upon which it rests. Sehjpal testified that his aunt spoke with an immigration attorney in Memphis, Tennessee, Barry Frayinger, and that after her conversation with that attorney Sehjpal's state of mind changed regarding how he felt about pleading guilty and his status in the United States after he pleaded guilty. This testimony fails to establish any legal basis or authority for Sehjpal's belief (implied by the context of this testimony) that his deportation was a legal certainty. Finally, Sehjpal testified that after he was sentenced he spoke to an unnamed attorney in San Francisco who advised Sehjpal that he should attempt to reopen his case because "It was ineffective assistance" and "you don't have a chance if you know, if you don't open the case." This oblique testimony amounts to a mere legal conclusion regarding an ineffective assistance claim and fails to establish any basis to show that Sehjpal's trial attorney should have advised Sehjpal that his deportation and permanent exclusion from the country was the very likely

consequence of a guilty plea.

Sehjpal's evidence has failed to establish the first prong of Strickland, that his counsel's performance was deficient. He asserts that the almost certain result of his guilty plea is that he will be deported and not allowed to return to this country. He argues that competent counsel would have advised him of this reality. Yet he has not presented any evidence to establish this proposition. The only concrete fact that has been established is that Immigration and Customs Enforcement (ICE) has initiated deportation proceedings against Sehjpal. This is not a surprise. The matter discussed between Sehjpal and his counsel was not *whether* deportation proceedings would be initiated[3] but rather whether Sehjpal had a chance of fighting the deportation process.

Realizing that he was not an expert in immigration law, Rich referred Sehjpal to an immigration attorney to discuss the issue of possible deportation based on a guilty plea. In addition, Rich testified that he reviewed the applicable statutes and found that the charges against Sehjpal under 18 U.S.C. § 2252A were not listed as a violation that would automatically render an alien deportable. Rich's advice to Sehjpal that there was a possibility that he would be deported was based on a competent investigation by Rich of the charges against Sehjpal. I cannot conclude, on the record before me, that Rich's performance as counsel was constitutionally deficient. As a result I will deny Sehjpal relief based on the claim that he received ineffective assistance of counsel from his trial counsel which resulted in his unknowing entry of a guilty plea.

C.  *Sehjpal's Remaining Grounds for Relief*

I find that all of Sehjpals remaining grounds for relief are barred by procedural default, by

---

[3] Paragraph 33 of the Presentencing Report states that ICE will initiate removal proceedings following sentencing.

his plea agreement, and as a matter of law.

Sehjpal's remaining grounds assert constitutional violations and a violation of his right to receive notice that he had the right to contact the Indian Consulate regarding his arrest. These claims should have been raised in a direct appeal and may not be raised for the first time in an application for post-conviction relief. "Section 2255 is not a substitute for direct appeal, and matters which could have been raised on appeal will not be considered." United States v. Samuelson, 722 F.2d 425, 427 (8th Cir. 1983). Sehjpal did not file a direct appeal and as a consequence failed to present theses claims to the United States Court of Appeals for the Eighth Circuit for review. As a result, Sehjpal is barred from raising these issues here in his collateral § 2255 proceeding.

In addition, in his plea agreement Sehjpal waived "all rights to contest the conviction or sentence in any post-conviction proceeding, including [a § 2255 proceeding], except for claims of prosecutorial misconduct or ineffective assistance of counsel." None of Sehjpal's remaining grounds for relief are based on prosecutorial misconduct or ineffective assistance of counsel and are therefore barred from consideration.

Moreover, these grounds for relief are baseless as a matter of law.

*Double Jeopardy / Equal Protection / Due Process*

Sehjpal asserts that his potential deportation and permanent ban from reentering the country amounts to double jeopardy and a violation of his due process and equal protection rights. Sehjpal does not cite any case law which has held that the deportation of a defendant after his conviction violates the double jeopardy clause or the defendant's due process and equal protection rights.

To the contrary, "[i]t is well established that neither the Ex Post Facto Clause nor the

Double Jeopardy Clause is applicable to deportation proceedings." Seale v. Immigration and Naturalization Service, 323 F.3d 150, 159 -160 (1st Cir. 2003)(citing Bugajewitz v. Adams, 228 U.S. 585, 591 (1913)("It is thoroughly established that Congress has power to order the deportation of aliens whose presence in the country it deems hurtful. The determination by facts that might constitute a crime under local law is not a conviction of crime, nor is the deportation a punishment; it is simply a refusal by the government to harbor persons whom it does not want.).

Similarly, deportation does not violate Sehjpal's due process or equal protection rights. See Munoz v. Ashcroft, 339 F.3d 950, 954 (9th Cir. 2003)(due process rights) and Anwo v. Immigration and Naturalization Service, 607 F.2d 435, 438 n.9 (D.C. Cir. 1979)(equal protection).

*Cruel and Unusual Punishment*

Sehjpal also asserts that being deported and barred from reentry amounts to cruel and unusual punishment in violation of the Eighth Amendment. Sehjpal does not cite any case law in the deportation context in support of this proposition.

This ground for relief is also without merit. See Cadet v. Bulger, 377 F.3d 1173, 1196 (11th Cir. 2004)(because immigration proceedings are not criminal and do not constitute punishment, an alien's removal does not violate the Eighth Amendment).

*The Vienna Convention on Consular Relations Treaty*

Article 36 of the Treaty states that if an alien is arrested or detained in any manner, "competent authorities" of the arresting "State" shall informed him of his right to contact his consulate, and if he requests, shall inform the alien's consulate of the action. Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77.

Sehjpal asserts that he should be allowed to withdraw his guilty plea because the no one

informed him and the Indian Government of their notification rights under Article 36 of the Treaty.

Such a failure does not automatically void a guilty plea rendered in the absence of being informed of the right to contact the consulate. The "failure to advise a criminal defendant of his right to consular contact [does] not constitute a jurisdictional defect; therefore, and a knowing and voluntary guilty plea forecloses any claimed error based on a violation of the Vienna Convention. United States v. Gonzales, 339 F.3d 725, 729 (8th Cir. 2003).

Sehjpal contends that had he been notified of his right to contact the Indian Consulate he would "have correctly and entirely been informed of his constitutional rights, provided with the ability of being represented by effective counsel, and advised of any and all immigration and appellate rights, defenses, and alternatives in the above case as a Citizen of India." [Memo. in Supp. at 24] Had he consulted with the consulate he would have been able to make an "educated" decision regarding his guilty plea. Id.

Sehjpal has failed to show what additional advice he would have received from the consulate that would have effected his decision to enter a guilty plea. I advised him of his constitutional rights at the plea hearing and his appellate rights at his sentencing. As I concluded in the present memorandum and order, he was effectively and vigorously represented by counsel and he was fairly advised of his immigration rights by counsel. As a result, I find that Sehjpal was not prejudiced by the failure to notify him of his right to contact the Indian Consulate.

D. *Certificate of Appealability*

I have also considered whether to issue a certificate of appealability. To grant a certificate of appealability, the Court must find a substantial showing of the denial of a federal constitutional right. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). A substantial

showing is a showing that issues are debatable among reasonable jurists, a Court could resolve the issues differently, or the issues deserve further proceedings. Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994). Because petitioner has not made such a showing in this case, I will not issue a certificate of appealability.

*E.    Conclusion*

Because I find the grounds for relief in Sehjpal's § 2255 motion to be without merit I will deny his motion to withdraw his guilty plea.

Accordingly,

**IT IS HEREBY ORDERED that** Vishal Sehjpal's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 [#1] is **DENIED**.

**IT IS FURTHER ORDERED that** this Court will not issue a certificate of appealability, as Sehjpal has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 5th day of October, 2009.